IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROSARIO VELARDEZ, | ) | CASE NO. 1:10 CV 2879 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

Before me[1] is an action under 42 U.S.C. § 405 by Rosario Velardez for judicial review of the final decision of the Commissioner of Social Security denying her application for supplemental security income.[2] After the Commissioner filed an answer[3] and the administrative record,[4] the parties briefed their positions[5] and participated in a telephonic oral argument.[6]

---

[1] ECF # 13. The parties have consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 10.

[4] ECF # 11.

[5] ECF # 15 (Velardez fact sheet); ECF # 18 (Commissioner's brief with charts); ECF # 20 (Velardez brief with charts).

[6] ECF # 22.

For the reasons that follow, I will find that the decision of the Commissioner is supported by substantial evidence and, therefore, will be affirmed.

## Facts

**A.     The findings and decision of the Administrative Law Judge**

Velardez, who was 52 years old at the time of the hearing,[7] completed the eleventh grade in school and has custody of her eight year old grandson, for whom she is the primary care giver.[8] She is able to communicate in English.[9] She previously worked as a babysitter, a laborer/paint finisher, and a parts maker.[10] She now subsists on welfare payments and child support for her grandson.[11]

The Administrative Law Judge ("ALJ"), whose decision became the final decision of the Commissioner, found that Velardez had severe impairments consisting of depression, tear of the anterior supraspinatus of the left shoulder, osteoarthritis of the left knee, and borderline intellectual functioning.[12]

The ALJ made the following finding regarding Velardez's residual functional capacity:

---

[7] Transcript ("Tr.") at 23.

[8] *Id*. at 17.

[9] *Id.* at 23.

[10] *Id*. at 22.

[11] *Id*. at 18.

[12] *Id*. at 13.

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a range of limited light work that includes sedentary work as defined in 20 CFR 416.967(b) with the following additional limitations. Light work involves occasionally lifting and carrying up to 20 pounds and frequently lifting or carrying objects weighing up to 10 pounds with no pushing and pulling on objects over ten pounds on an occasional basis. Specifically, the claimant is capable of performing work that requires no lifting above shoulder level with the non-dominant upper extremity. Secondary to her depression and borderline intellectual functioning, the claimant retains the ability to understand, remember and carry out simple instructions and perform simple repetitive tasks as consistent with unskilled work activity. She is to perform no work requiring close interaction with the general public. The claimant has no established communicative, other manipulative, postural, environmental, other mental or visual limitations. The claimant is able to perform sustained work activity on a regular and continuous basis for eight hours per day, forty hours per week with normal breaks being sufficient.[13]

Given that residual functional capacity, the ALJ found Velardez incapable of performing her past relevant work as a babysitter, a laborer/paint finisher, and as a parts maker.[14]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the residual functional capacity finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Velardez could perform.[15] The ALJ, therefore, found Velardez not under a disability.[16]

---

[13] *Id.* at 17.

[14] *Id.* at 22.

[15] *Id.* at 23.

[16] *Id.* at 23-24.

**B.    Issues on review**

Velardez asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Velardez raises three issues on review:

1. Whether substantial evidence supports the ALJ's decision that Ms. Velardez does not have an impairment or combination of impairments that meets the criteria of Listing 12.05(C).

2. Whether the ALJ's determination that [Velardez] can perform a range of light work is supported by substantial evidence and whether he erred in failing to address Ms. Velardez's ability to stand and walk.

3. Whether the ALJ properly considered Ms. Velardez's obesity in determining her residual functional capacity.[17]

## Analysis

**A.    Standard of review**

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "

---

[17] ECF # 20 at 1.

>     The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[18]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence.  If such is the case, the Commissioner survives "a directed verdict" and wins.[19]  The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[20]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

**B.     Applications of standard**

**1.     The ALJ did not err in finding that Velardez did not meet or equal the listing for mental retardation.**

Listing § 12.05(C) defines mental retardation as significantly subaverage general intellectual functioning characterized by deficits in adaptive functioning manifest before age 22, as well as "a valid verbal, performance or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function."[21]

---

[18] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[19] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[20] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

[21] 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05(C).

The ALJ in this case determined that Velardez did not meet this listing because she did not have a valid IQ score within the acceptable range.[22]

Velardez here bases her argument on an IQ test administered in 2008 by Richard Halas, Ph.D., a consultative examiner, indicating that she had a verbal IQ score of 69, performance IQ of 77, and full scale IQ of 70.[23] As Velardez notes, these are the only IQ scores in the administrative record.[24] She asserts that these scores, together with evidence of her below average language and math skills, prove that she meets the preliminary criteria of § 12.05(C).[25] She then contends that such a finding can be added to the ALJ's determination that Velardez's impairments impose significant limitations on her work-related activities to establish that she meets the listing.[26]

I note initially that this case is similar to *Brooks v. Astrue*,[27] where then District, now Circuit Judge O'Malley considered a claimant with a single IQ score of 69 who had been diagnosed with borderline intellectual functioning, not mental retardation, but argued that she met the listing at § 12.05(C).[28] In an extensive exposition of the applicable law,

---

[22] Tr. at 16-17.

[23] *Id*. at 215-219.

[24] ECF # 20 at 10.

[25] *Id*. at 11.

[26] *Id*.

[27] *Brooks v. Astrue*, No. 08-CV-2608, 2010 WL 1254323 (N.D. Ohio March 24, 2010).

[28] *Id*., at *2.

Judge O'Malley found that "factors external to the test itself, including [the claimant's] lifestyle, daily behavior, past work experience, and her borderline intellectual functioning diagnosis, could properly be considered by the ALJ" in finding an IQ score invalid.[29] She affirmed the decision of the ALJ, who found the single IQ score invalid on the ground that the claimant was diagnosed with borderline intellectual functioning, not mental retardation, and because the claimant's work experience and life skills indicated she was not mentally retarded.[30]

Here, the record is nearly identical. In that regard, no professional source has diagnosed Velardez as mentally retarded. Even Dr. Halas, on whom Verlardez relies, stated that she has borderline intellectual functioning, not mental retardation.[31] Further, the state agency reviewing psychologist, Roy Shapiro, Ph.D., who reviewed the IQ results, concurred in Dr. Halas's diagnosis of borderline intellectual functioning.[32] In addition, the ALJ, like the ALJ in *Brooks*, reviewed and discussed Velardez's daily activities, social functioning, and work skills before concluding that Listing § 12.05(C) was not met.[33]

---

[29] *Id*., at *5.

[30] *Id*., at *2.

[31] Tr. at 215-16.

[32] *Id*. at 220-37.

[33] *Id*. at 15-17.

In addition, as the Commissioner points out, Dr. Shapiro further stated directly that Velardez did not meet or equal Listing § 12.05(C).[34] The Sixth Circuit teaches that a medical expert's conclusion that a claimant does not meet or equal a listing is substantial evidence of that determination.[35]

Thus, on this record and for the reasons stated, the ALJ properly discounted the single IQ score in this case and had substantial evidence to find that she did not meet or equal the Listing § 12.05(C).

**2.    Substantial evidence supports the RFC finding.**

Velardez argues here that the ALJ's RFC determination that she could perform a range of light work is inconsistent with the objective medical evidence of record.[36] She states that "abnormalities of [her] cervical spine, left shoulder which requires surgery, ankle, left hip and left knee" all show that the RFC findings –  that she can stand or walk up to six hours a day or push and pull arm controls –  are not supported by substantial evidence.[37]

Most particularly, Velardez focuses on the absence of standing or walking restrictions within the RFC.[38] But, as the Commissioner observes, two state agency physicians reviewed the record as to Velardez's allegation of knee pain and found that she was capable of

---

[34] *Id*. at 220-37.

[35] *Conn v. Sec'y of Health & Human Servs.*, 7 F.3d 232, 1993 WL 384966, at *1 (6th Cir. Sept. 29, 1993) (table decision) (citation omitted).

[36] ECF # 20 at 11-13.

[37] *Id*. at 13 (citing transcript).

[38] *Id*. at 1, 11.

standing and/or walking for six hours in an eight hour day.[39] In addition, although the ALJ did credit Velardez's complaints to some extent, he noted that she had normal gait and was able to conduct her daily affairs such as shopping, going for walks and caring for her grandson without the use of a car.[40]

The most significant question appears to be what effect a July, 2009 x-ray of Velardez's left knee[41] – an x-ray those two state agency physicians would not have seen because they reviewed the file in 2008 – may have on the RFC determination. In that regard, the ALJ cited to the results of an examination conducted in July, 2009 – the same month as the x-ray – by one of Velardez's treating physicians, Frank Sailors, D.O., wherein the ALJ noted that there was no mention of "any complaints or problems regarding a left knee impairment."[42] The ALJ further noted that progress notes from August to October, 2009, from Lilian Lopez, D.O., another primary care treating physician, "document no compelling findings regarding the left shoulder or knee complaints."[43] The ALJ particularly stated that the "objective findings on examination" of Dr. Sailor and Dr. Lopez, among others, were afforded "significant and concurring weight and are supportive of each other's findings."[44]

---

[39] *See*, ECF # 18 at 13 (citing opinions of Dr. Holbrook, tr. at 239, and Dr. Cruz, tr. at 254, 260).

[40] Tr. at 21-22.

[41] ECF # 20 at 13 (citing tr. at 362).

[42] Tr. at 21.

[43] *Id.*

[44] *Id.* at 22.

Thus, the ALJ here did use and rely on medical reports of Velardez's condition that post-dated the July, 2009, x-ray. Further, two of these reports came from treating physicians to which the ALJ attributed great weight. These reports, as noted, contained no complaints from Velardez about her knee. As such, the ALJ's use of these reports adequately addressed the functional limits that may have been created by the condition depicted on the July, 2009 x-ray, which the reviewing sources did not have available to them. Moreover, the conclusion reached by the ALJ from his consideration of the treating source records in this respect comports with the conclusions reached by the reviewing sources.

**3.    The ALJ properly considered obesity in determining the RFC.**

Velardez contends that the ALJ erred by failing to consider her obesity in determining her RFC.[45]

As the Sixth Circuit recently stated, SSA regulations require administrative law judges to consider the effects of obesity as part of their adjudication of a claim for benefits.[46] But, where a claimant does not list obesity as one of her impairments or present evidence from a physician opining that the claimant's weight "imposed additional limitations upon her or exacerbated her other conditions," no evidence on obesity would be present that an ALJ would need to consider.[47] Indeed, as Magistrate Judge Limbert very recently noted in *Penn*

---

[45] ECF # 20 at 14.

[46] *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011) (citation omitted).

[47] *Id*.

*v. Astrue*,[48] where there is, as here, no medical evidence "that [a claimant's] obesity has increased the severity of her other limitations, the record demonstrates that the ALJ sufficiently considered the plaintiff's obesity in formulating her RFC."[49]

The ALJ properly handled the matter of Velardez's obesity in formulating her RFC.

## Conclusion

For the foregoing reasons, I find that substantial evidence supports the finding of the Commissioner that Velardez had no disability.  Accordingly, the decision of the Commissioner denying Velardez supplemental security income is affirmed.

IT IS SO ORDERED.


Dated:  March 16, 2012                               s/ William H. Baughman, Jr.
                                                     United States Magistrate Judge

---

[48] *Penn v. Astrue*, 2012 WL 646057 (N.D. Ohio Feb. 28, 2012).

[49] *Id.*, at *8 (citations omitted).

-11-